## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Kilton L. Kitchen,**
**Petitioner Below, Petitioner**

**vs)  No. 18-0554** (Hampshire County 17-C-97)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**December 20, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Kilton L. Kitchen, pro se, appeals the June 15, 2018, order of the Circuit Court of Hampshire County denying his second petition for a writ of habeas corpus. Respondent Donnie Ames, Superintendent, Mt. Olive Correctional Complex, by counsel Shannon Frederick Kiser, filed a summary response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the relevant standards of review, the parties' briefs in both appeals, and the record on appeal, the Court finds that a memorandum decision affirming the circuit court's order under Rule 21 of the Rules of Appellate Procedure is appropriate.

The factual and procedural background of petitioner's criminal case was set forth in *Kitchen v. Ballard* ("*Kitchen I*"), No. 15-0463, 2016 WL 2970055 (W.Va. May 20, 2016) (memorandum decision):

> Petitioner was indicted in February of 2009 for first[-]degree murder and conspiracy to commit murder. The victim was Willard Malcolm, who was petitioner's girlfriend's employer and a friend of her family. The matter proceeded to a jury trial in August of 2009. The evidence at petitioner's trial revealed that on October 26, 2008, petitioner and his girlfriend, Patty Lopez[,] were traveling in Ms. Lopez's car to rent a movie when petitioner became enraged and accused Ms. Lopez of having an affair with several men, including the victim. Ms. Lopez turned the car around and returned home. Petitioner lived with Ms. Lopez at the time. Ms. Lopez's children, her mother, and her mother's boyfriend were at the house waiting for petitioner and Ms. Lopez to return with the movie. The argument continued after petitioner and Ms. Lopez returned to the house. While petitioner was in the shower, everyone else left to go to the house of another friend, Jamie Dean.

1

Shortly thereafter, petitioner went to the Dean residence accompanied by another man. In a rage, petitioner banged on the door and demanded that Ms. Lopez come outside. Ms. Lopez hid while her mother prevented petitioner from entering. Petitioner eventually left. At that point, Ms. Lopez called the victim and asked him to go to her house to retrieve her keys and some clothes for her children. An extended amount of time passed without hearing back from the victim, so Ms. Lopez's mother and her boyfriend went to Ms. Lopez's house to investigate. Just before 10:10 p.m., they found the victim at Ms. Lopez's house, laying face-down, covered in blood, and holding Ms. Lopez's keys. He died the following day of head trauma.

The evidence at petitioner's trial also revealed that, while petitioner was at Ms. Lopez's house on the day of the murder, he telephoned Ms. Lopez's brother several times demanding to know Ms. Lopez's whereabouts. During one of the calls, petitioner told Ms. Lopez's brother that someone was pulling into the driveway, and told the brother, "Did your bitch of a sister send Willard Malcolm to kick me out of the house or come get the keys? . . . That's alright, I will take care of it . . . [.]" It was not long after that call that the victim was found at Ms. Lopez's house.

In addition, in the evening of that same day, petitioner and his brother were at a local Sheetz convenience store when they encountered petitioner's friend, John Boyce. Petitioner, petitioner's brother, and Mr. Boyce went to petitioner's brother's house. Mr. Boyce testified that petitioner asked him if he heard about the murder. According to Mr. Boyce's testimony, petitioner admitted that he committed the murder with steel-toed boots and a baseball bat.

Petitioner was convicted of both charges in the indictment. The circuit court sentenced him to life in prison, with mercy, and an indeterminate prison term of one to five years for conspiracy. The circuit court ordered that the sentences run consecutively. In April of 2010, petitioner appealed to this Court, which appeal was refused by order in September of 2010.

*Id.* at *1-2 (Footnote omitted).

On August 29, 2011, petitioner filed a petition for a writ of habeas corpus. From September 9, 2011, to September 6, 2013, four attorneys were successively appointed as habeas counsel. During this period, an amended petition, a supplemental petition, and a *Losh* checklist were filed on petitioner's behalf.[1] The last attorney appointed as habeas counsel was Jonie E. Nelson ("habeas counsel"), who filed a second supplemental petition on June 25, 2014, and an

---

[1]In *Losh v. McKenzie*, 166 W. Va. 762, 277 S.E.2d 606 (1981), we compiled a nonexclusive list of potential grounds that a circuit court should address with a habeas petitioner as to whether each ground was being either waived or raised in the proceeding. *Id.* at 768-70, 277 S.E.2d at 611-12.

amended *Losh* checklist on January 27, 2015. Habeas counsel represented petitioner at an omnibus hearing on February 18, 2015.

At the omnibus hearing, petitioner presented the testimony of Mr. Boyce, who admitted that he had memory problems, in support of the claim that Mr. Boyce was incompetent to testify at trial and, therefore, the State knowingly used perjured testimony. The issues raised in petitioner's written submissions were: (1) prejudicial pre-trial publicity; (2) failure of counsel to file a direct appeal; (3) consecutive sentences for the same transaction; (4) excessive bail; (5) prejudicial statements by the prosecuting attorney; (6) prosecutorial misconduct; (7) insufficient evidence; (8) more severe sentence than expected; (9) excessive sentence; and (10) ineffective assistance of trial counsel. Habeas counsel informed the circuit court that petitioner's ineffective assistance claim was "outlined in the [p]etition."

The circuit court placed petitioner under oath and questioned him regarding the *Losh* checklist to confirm which issues he was raising and which issues he was waiving. The circuit court inquired if petitioner understood that he would not be allowed to raise "all of the grounds initialed as waived/inapplicable" on the *Losh* checklist in subsequent proceedings. Petitioner answered, "Yes, sir." The circuit court noted that there was only one witness presented and asked petitioner "if there's any other additional evidence you want the [c]ourt to consider," explaining that "it would have to be done so now or it would be forever waived." Petitioner answered that he understood that he was waiving the right to present other evidence in support of his claims.

The circuit court noted that petitioner was represented by several attorneys during the first habeas proceeding and inquired as to his satisfaction with habeas counsel's performance. Petitioner testified that habeas counsel communicated with him on fifteen or twenty occasions either in person, on the phone, or through correspondence. Given the inclusion of additional grounds in the second supplemental petition, the circuit court asked petitioner if habeas counsel "turned over every stone . . . for you." Petitioner answered, "Yes, sir." The circuit court further asked if petitioner was satisfied "with [habeas counsel's] advice and representation in this case." Petitioner responded that he was.

By order entered on May 1, 2015, the circuit court "addressed and rejected each of petitioner's grounds for habeas relief." *Kitchen I*, 2016 WL 2970055, at *2. When petitioner appealed the May 1, 2015, order, this Court rejected petitioner's claims that Mr. Boyce was an incompetent witness and that there was prosecutorial misconduct, finding that "in either of Mr. Boyce's versions of petitioner's admission—that he committed the murder with or without [petitioner's] brother's involvement—the jury consistently heard from Mr. Boyce that petitioner admitted to . . . being involved." *Id.* at *5. The Court also rejected the claim of ineffective assistance and noted that trial counsel's objection to the testimony of another witness who stated that he had mostly heard only rumors regarding the murder was sustained. *Id.* at *6. Accordingly, this Court affirmed the circuit court's order denying habeas relief. *Id.*

On October 26, 2017, petitioner filed a second habeas petition, alleging that numerous grounds were not fully and finally adjudicated and/or waived in the first such proceeding due to the ineffective assistance of habeas counsel. By order entered June 15, 2018, the circuit court determined a hearing was not necessary and that the claim that habeas counsel provided

3

ineffective assistance was without merit. Accordingly, the circuit court found that the petition was barred by the doctrine of res judicata and denied relief. Petitioner now appeals the circuit court's June 15, 2018, order denying his second habeas petition.

In Syllabus Point 1 of *Anstey v. Ballard*, 237 W. Va. 411, 787 S.E.2d 864 (2016), we held:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

Furthermore, in Syllabus Point 4 of *Losh*, we held, in pertinent part, that "[a] prior omnibus habeas corpus hearing is *res judicata* as to all matters raised and as to all matters known or which with reasonable diligence could have been known; however, an applicant may still petition the court on the following grounds: ineffective assistance of counsel at the omnibus habeas corpus hearing[.]" 166 W. Va. at 762-63, 277 S.E.2d at 608.

On appeal, petitioner argues that habeas counsel was ineffective by either not raising or inadequately raising numerous grounds in the first such proceeding. Respondent counters that the circuit court properly denied the second petition given petitioner's failure to establish his claim that habeas counsel provided ineffective assistance. We agree with respondent.

In Syllabus Points 5 and 6 of *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995), we held:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

As we further stated in *Miller*,

4

[w]hen assessing whether counsel's performance was deficient, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. To demonstrate prejudice, a defendant must prove there is a "reasonable probability" that, absent the errors, the jury would have reached a different result. 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

194 W. Va. at 15, 459 S.E.2d at 126.

Here, petitioner testified at the omnibus hearing that he was satisfied with his representation and that habeas counsel communicated with him on fifteen or twenty occasions either in person, on the phone, or through correspondence. Habeas counsel presented only one witness (Mr. Boyce). However, when the circuit court asked petitioner if there was additional evidence he wanted the court to consider, petitioner answered that he understood that he was waiving the right to present other evidence in support of his claims. Also, given the inclusion of additional grounds in the second supplemental petition, petitioner testified that habeas counsel "turned over every stone . . . for [him]." Therefore, based on our review of the record, including the February 18, 2015, omnibus hearing transcript, we find that habeas counsel's performance was not deficient.

Moreover, even if there was some deficiency in habeas counsel's performance, we find that any such deficiency did not change the result of the proceeding as there was sufficient evidence to support petitioner's criminal convictions. As we found in *Kitchen I*, Mr. Boyce consistently testified before the jury that petitioner admitted to committing the murder. 2016 WL 2970055, at *5. While petitioner contends that Mr. Boyce's testimony was false, "[c]redibility determinations are for a jury and not an appellate court." Syl. Pt. 3, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Accordingly, we conclude that the circuit court did not abuse its discretion in denying the second habeas petition given petitioner's failure to establish his claim that habeas counsel provided ineffective assistance.

For the foregoing reasons, we affirm the circuit court's June 15, 2018, order denying petitioner's second petition for a writ of habeas corpus.

Affirmed.

**ISSUED:** December 20, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison